UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOSHUA G. FRANKLIN SR.,

                           Plaintiff,

        v.

JOHN ACKERMAN, et al.,

                           Defendant.

CASE NO. 3:21-cv-05071-RSM-BAT

**REPORT AND
RECOMMENDATION**

Plaintiff proceeds *pro se* in this 42 U.S.C. § 1983 civil rights action. Currently pending before the Court is Defendants' motion to dismiss filed by Defendants John Ackerman, K. Vandenberg, A. Rice, M. Paulus, Kerri Taft, and C. Hackney ("Medical Defendants"). Dkt. 17. Plaintiff did not file a response to the motion.

For the reasons below, the Court recommends that Defendants' motion to dismiss (Dkt. 17) be GRANTED IN PART and DENIED IN PART.

**FACTUAL ALLEGATIONS OF COMPLAINT**

Plaintiff's complaint alleges that on or about March 5, 2020, while being examined by medical staff during the booking process at Clark County Jail, Plaintiff informed correctional staff that he had a "broken tooth" and "abscess tooth." Dkt. 4, at 8. Plaintiff indicates this was noted in his medical chart. *Id.*, at 8-11. On March 16, 2020, Plaintiff sent an electronic request to

REPORT AND RECOMMENDATION - 1

medical, asking to be seen due to his broken tooth and concerns about infection. Dkt. 4, at 11; Dkt. 4-1, at 1. R.N. C. Hackney respondent by indicating Plaintiff had been added to the list for sick call. *Id.* On March 19, 2020, Plaintiff submitted another electronic request to medical asking to be seen as soon as possible due to pain, swelling and numbness and being and unable to talk, eat or drink because his broken tooth was cutting into his tongue. Dkt. 4, at 11; Dkt. 4-1, at 2. Plaintiff further indicated he had been scheduled for oral surgery two days after he ended up being booked into the Jail because he had been told his tooth was severely infected. *Id.* R.N. Kerri Taft responded by stating the dentist only came once a week and saw patients in the order that kites were received but that he was scheduled with the dentist. *Id.*

Plaintiff states that on March 21, 2021, he submitted an electronic medical request, asking to see the dentist, reiterating the pain and difficulty his broken tooth was causing and his concerns regarding infection. Dkt. 4, at 11; Dkt. 4-1, at 3. R.N. A. Rice responded by informing Plaintiff he was on the list to be seen by the dentist and the sick call nurse. *Id.* Plaintiff indicates he submitted another medical request later that same day asking why he was being denied medical treatment, despite the seriousness of his broken tooth. Dkt. 4, at 11-12. On March 22, 2020, R.N. Kerri Taft responded stating that Plaintiff just had to wait his turn like everyone else and that he had been prescribed Ibuprofen and Tylenol and that he should avoid hot and cold fluids and avoid chewing on that side. Dkt. 4, at 11-12; Dkt. 4-1, at 6. On March 21, 2020, Plaintiff submitted a medical grievance in which he indicated that the dentist had been present that day and even though the dentist only came once per week he was denied dental treatment. *Id.* On March 23, 2020, Director of Nursing, K. Vandenberg, responded to the grievance stating that Plaintiff was scheduled for a dental exam, although they were currently limiting non-

emergent appointments due to pandemic safety, and to let medical know if he needed further care. *Id.*

Plaintiff states that on March 28, 2020, he was called to the dentist office where the dentist (John Doe #1) determined that extraction of Plaintiff's back left molar was necessary. Dkt. 4, at 12-13. Plaintiff states that he told the dentist he had been scheduled for oral surgery weeks prior but was taken into custody before the surgery was performed. *Id.* He states that he told the dentist he required oral surgery because this was not a normal extraction due to how close the molar's root was to his nerve. *Id.* Plaintiff states that the dentist assured him he could extract it. *Id.* However, a few minutes into the procedure the dentist's equipment stopped working and it was determined they would need to order a replacement piece to complete the procedure. *Id.* Plaintiff states the dentist assured him he would have the new part sent overnight and sent Plaintiff back to his unit. *Id.* Later that day Plaintiff filed a grievance explaining that half the broken tooth was still in his mouth, that it was bleeding and draining, that half the left side of his face was in extreme pain and that this lips were still numb. Dkt. 4, at 12-13; Dkt. 4-1, at 7. Three days later, on March 31, 2020, K. Vandenberg responded to the grievance stating "we are working on remedying your dental solution ASAP. Thank you for your patience." *Id.* On March 28, 2020, Plaintiff also filed a medical request stating:

> I need to be seen by medical ASAP! I went to the dentist today and halfway pulling my tooth out, he broke the tooth and then realized he needed to cut it out but then, his tool broke, leaving half the tooth in there, making it worse because of the angle he crushed the tooth, shoving it deeper and now its not only sharp, its still bleeding, and my lips, for some reason are still completely numb and the dentist told me he would try to get his tool fixed by the end of the day an[d] if he couldn't, he would hopefully get a new tool by Saturday. I am in EXTREME pain and this is NOT right!!! Could I please see medical asap???

Dkt. 4, at 13; Dkt. 4-1, at 4. On March 29, 2020, Kerri Taft responded stating:

> The providers have upped your tylenol dose from 625 to 100 mg twice a day and you still have your Ibuprofen 800 mg twice a day as well. Unfortunately there is nothing that the

medical staff can do regarding your tooth at this point and the dentist has ordered the
tools necessary to complete the extraction next week.

On March 29, 2020, Plaintiff filed another medical request stating:

I am being told that I have to wait a week for my tooth extraction. This constitutes as
cruel and unusual punishment, due to the fact that the dentist started a procedure and due
to equipment malfunction. I have to suffer and be in pain, for a week, at least. And the
only solution I'm being given is upping my dosage of Tylenol per day??? My whole side
of my jaw is swollen, half my tooth is still in my jaw, and now apart of the broken tooth
is cutting not only into my tongue, but also my gums. And on top of that, the gum will try
to start healing itself over the broken tooth. This is definitely not right, and when I make
complaints about it because now my whole left side of my face is on fire and feels like its
burning up, I'm told accidents like the dental machine breaking down and
malfunctioning, just happens. This constitutes as cruel and unusual punishment and I
need to see medical please.

Dkt. 4, at 13; Dkt. 4-1, at 5. On March 29, 2020, M. Paulus responded that Plaintiff was

"currently on the sick call list to be seen by the sick call nurse at a later time." *Id.*

Plaintiff states that the replacement part for the tool finally arrived on April 9, 2020, but it

was the wrong part. Dkt. 4, at 13. Plaintiff states that on April 16, 2020, he was taken to the

Salmon Creek oral surgery where the oral surgeon finished the tooth extraction. *Id.* Plaintiff

states that since the first attempted extraction on March 28, 2020, his lower left and bottom lip

and jaw has remained completely numb due to his nerve being damaged. *Id.* Plaintiff states that

since April 10, 2020, he has filed six more inmate and medical requests and seven more

grievances. *Id.*

As a result of his broken tooth and lack of treatment, Plaintiff indicates he was either

unable or had difficulty eating, drinking, sleeping and concentrating and suffered from severe

pain both inside and outside of his mouth and jaw, severe headaches, and PTSD. Dkt. 4, at 8-23.

He further alleges his nerve was "damaged or cut" and that as a result he will always have

difficulty eating due to lack of feeling in his lower jaw and lip and that he has suffered

"emotional anguish" as a result. *Id.*, at 10.

Plaintiff also claims Defendants' failure to provide adequate medical and dental treatment constituted intentional infliction of emotional distress and negligence and/or gross negligence. Dkt. 4, at 15, 21. Plaintiff alleges that Defendants K. Vandenberg and John Ackerman were entrusted as medical supervisors to ensure Plaintiff received proper medical and dental care and were "well aware of Plaintiff's dental emergency" and were "grossly negligent" in the actions they took. Dkt. 4, at 21-22.

Plaintiff further alleges Defendants violated his right to Due Process. Dkt. 4, at 16-20. Plaintiff alleges on March 21, 2020, he submitted his first grievance which was denied by K. Vandenberg stating that staff were limiting non-emergent appointments due to the COVID-19 epidemic. *Id.* Plaintiff states he filed a medical grievance on May 15, 2020, which was denied initially and denied again on appeal by medical administrator John Ackerman, medical commander K. Beltran, and Jail administrator Ric Bishop. *Id.* Plaintiff states that per the Clark County Medical Inmate Grievance Form, inmates are supposed to receive an answer to their grievance within 10 business days from each administrative level. *Id.* However, Plaintiff indicates his medical grievance had gotten lost which delayed a response from the Jail administrator Ric Bishop for 3 months. *Id.* Plaintiff alleges generally his due process rights were violated when his grievances and requests for relief were denied. *Id.*[1]

*//*

---

[1] The Court notes that Plaintiff also alleges he was denied his constitutional right to have access to legal assistance through the pro se law library while incarcerated and was thus unable to properly research his constitutional rights and to properly present his medical emergency to the courts by requesting a furlough. Dkt. 4, at 20. However, Plaintiff does not allege the medical defendants were involved in this alleged violation nor have the medical defendants addressed it in their motion to dismiss. Accordingly, these claims are not addressed herein. Plaintiff also raised due process claims against his own attorneys and the prosecuting attorney for their actions related to his attempts to seek assistance from the state courts in obtaining dental care. Dkt. 4, at 18-19. However, those claims were previously dismissed by order of this Court and, as such, are also not addressed herein. *See* Dkts. 9, 10.

REPORT AND RECOMMENDATION - 5

1

**STANDARD OF REVIEW**

2    A motion to dismiss can be granted only if a plaintiff's complaint, with all factual

3    allegations accepted as true, fails to "raise a right to relief above the speculative level". *Bell*

4    *Atlantic Corp. v. Twombly,* 550 U.S. 544, 545 (2007).

5
> To survive a motion to dismiss, a complaint must contain sufficient factual
6    matter, accepted as true, to "state a claim to relief that is plausible on its
> face." A claim has facial plausibility when the plaintiff pleads factual
7    content that allows the court to draw the reasonable inference that the
> defendant is liable for the misconduct alleged. The plausibility standard is
8    not akin to a probability requirement, but it asks for more than a sheer
> possibility that a defendant has acted unlawfully.

9    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 556, 570).

10    A complaint must contain a "short and plain statement of the claim showing that the

11    pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Specific facts are not necessary; the

12    statement need only give the defendant fair notice of what the . . . claim is and the grounds upon

13    which it rests." *Erickson v. Pardus, et al.*, 551 U.S. 89, 93 (2007) (internal citations omitted).

14    However, the pleading must be more than an "unadorned, the-defendant-unlawfully-harmed-me

15    accusation." *Iqbal*, 556 U.S. at 678.

16    While the Court must accept all the allegations contained in the Complaint as true, the

17    Court does not have to accept a "legal conclusion couched as a factual allegation." *Id.*

18    "Threadbare recitals of the elements of a cause of action, supported by mere conclusory

19    statements, do not suffice." *Id.*; *Jones v. Community Development Agency*, 733 F.2d 646, 649

20    (9th Cir. 1984) (vague and mere conclusory allegations unsupported by facts are not sufficient to

21    state section 1983 claims); *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992). While the Court

22    is to construe the complaint liberally, such construction "may not supply essential elements of

23    the claim that were not initially pled." *Pena*, 976 F.2d at 471.

*//*

REPORT AND RECOMMENDATION - 6

**DISCUSSION**

In order to state a claim for relief under 42 U.S.C. § 1983, a plaintiff must show: (1) he suffered a violation of rights protected by the Constitution or created by federal statute, and (2) the violation was proximately caused by a person acting under color of state law. *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). The first step in a § 1983 claim is therefore to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). To satisfy the second prong, a plaintiff must allege facts showing how individually named defendants caused, or personally participated in causing, the harm alleged in the complaint. *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

**A.        Constitutional Right to Adequate Medical Care**

Defendants argue Plaintiff has failed to state a claim under the Eighth Amendment related to his medical care. Dkt. 17. It appears to the Court, however, that Plaintiff was very likely a pretrial detainee at the time of the events giving rise to his complaint. Specifically, Plaintiff alleges that the events giving rise to his claims occurred shortly after he was booked into Clark County Jail and a review of his state court records appear to reflect that he was a pretrial detainee during the period in question.[2] Construing the complaint in the light most favorable to Plaintiff, Plaintiff alleges he was a pretrial detainee at the time of the events giving rise to his claims. However, whether analyzed under the Eighth or Fourteenth Amendment, the Court finds that Plaintiff has stated a claim of constitutionally inadequate medical care with respect to Medical Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft but fails to state a claim with respect to Medical Defendants C. Hackney and John Ackerman.

---

[2] The Court has reviewed the available state court records in Plaintiff's criminal cases which appear to reflect that Plaintiff was a pretrial detainee at the time of the events giving rise to his complaint. https://odysseyportal.courts.wa.gov/ODYPORTAL/Home/WorkspaceMode?p=0

1    A pretrial detainee's right to adequate medical care arises under the due process clause of

2    the Fourteenth Amendment. *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1120 (9th Cir. 2018).

3    The elements of such a claim are:

4        (i) the defendant made an intentional decision with respect to the conditions under
         which the plaintiff was confined; (ii) those conditions put the plaintiff at

5        substantial risk of suffering serious harm; (iii) the defendant did not take
         reasonable available measures to abate that risk, even though a reasonable official

6        in the circumstances would have appreciated the high degree of risk involved—
         making the consequences of the defendant's conduct obvious; and (iv) by not

7        taking such measures, the defendant caused the plaintiff's injuries.

8    *Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively

9    unreasonable, a test that will necessarily 'turn[ ] on the facts and circumstances of each particular

10   case.'" *Id.* (quoting *Castro v. Cnty. of L.A.*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)

11   (quoted sources omitted)). A defendant's "mere lack of due care" is insufficient to state a

12   Fourteenth Amendment claim. *Id.* (quoting *Castro*, 833 F.3d at 1071 (quoted source omitted)).

13   Thus, a plaintiff must "prove more than negligence but less than subjective intent—something

14   akin to reckless disregard." *Id.* (quoting *Castro*, 833 F.3d at 1071).

15   In contrast, a post-conviction prisoner's right to adequate medical care arises under the

16   Eighth Amendment. To establish an Eighth Amendment violation related to medical care, an

17   inmate must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to

18   serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Clouthier v. Cnty.*

19   *of Contra Costa*, 591 F.3d 1232, 1241 (9th Cir. 2010). "Dental care is one of the most important

20   medical needs of inmates." *Hunt v. Dental Dept.*, 865 F.2d 198, 200 (9th Cir. 1989). Deliberate

21   indifference to serious medical needs of prisoners constitutes the unnecessary and wanton

22   infliction of pain. *Estelle*, 429 U.S. at 104 (internal citation omitted); *see Hudson v. McMillan*,

23   503 U.S. 1, 6 (1992). An Eighth Amendment medical claim has two elements: (1) "the

1  seriousness of the prisoner's medical need and [(2)] the nature of the defendant's response to that

2  need." *McGuckin v. Smith,* 974 F.2d 1050, 1059 (9th Cir.1991), *overruled on other grounds by*

3  *WMX Techs., Inc. v. Miller,* 104 F.3d 1133 (9th Cir.1997) (en banc).

4      A medical need is serious "if the failure to treat the prisoner's condition could result in

5  further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974

6  F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs. v.*

7  *Miller*, 104 F.3d 1133 (9th Cir. 1997). "The existence of an injury that a reasonable doctor or

8  patient would find important and worthy of comment or treatment; the presence of a medical

9  condition that significantly affects an individual's daily activities; or the existence of chronic and

10  substantial pain are examples of indications that a prisoner has a 'serious' need for medical

11  treatment." *Id.* at 1059-1060.

12      If a plaintiff shows he suffered from a serious medical need, he must then show the

13  prison officials responded to the serious medical need with deliberate indifference. *See Farmer v.*

14  *Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference, "the official must both

15  be aware of facts from which the inference could be drawn that a substantial risk of serious harm

16  exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference to a prisoner's

17  serious medical need requires "a purposeful act or failure to act on the part of the defendant."

18  *McGuckin*, 974 F.2d at 1060; *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006).

19      Deliberate indifference "may appear when prison officials deny, delay or intentionally

20  interfere with medical treatment, or [ ] may be shown by the way in which prison physicians

21  provide medical care." *Hutchinson v. U.S.*, 838 F.2d 390, 394 (9th Cir. 1988). However, delay in

22  providing a prisoner dental treatment does not constitute an Eighth Amendment violation unless

23  the delay causes substantial harm. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d

1   404, 407 (9th Cir. 1985); *Amarir v. Hill*, 243 Fed. Appx. 353, 354 (9th Cir. 2007). A prison

2   official may be held liable "only if he knows that inmates face a substantial risk of serious harm

3   and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at

4   847.

5           The indifference to medical needs must be substantial; a constitutional violation is not

6   established by negligence or "an inadvertent failure to provide adequate medical care." *Estelle*,

7   429 U.S. at 105-06; *Anthony v. Dowdle*, 853 F.2d 741, 743 (9th Cir. 1988).  Nor does a

8   difference of opinion between an inmate and medical authorities regarding proper medical

9   treatment give rise to a § 1983 claim. *Franklin v. Oregon, State Welfare Div.*, 662 F.2d 1337,

10  1344 (9th Cir. 1981); *Toguchi v. Chung*, 391 F.3d 1051, 1057-58 (9th Cir. 2004); *see also*

11  *Estelle*, 529 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely

12  because the victim is a prisoner."). An inmate must show the course of treatment chosen "'was

13  medically unacceptable under the circumstances . . . and . . . that they chose this course in

14  conscious disregard of an excessive risk to plaintiff's health.'"  *Toguchi*, 391 F.3d at 1058

15  (quoting *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1986)).

16          Here, Plaintiff has alleged facts showing he had a broken and infected tooth and that he

17  experienced severe pain and headaches and his pain impacted his daily activities. Dkt. 4. The

18  Court finds Plaintiff's broken tooth to be a serious medical need, meeting the first prong of the

19  deliberate indifference standard. *See McGuckin*, 974 F.2d at 1059-60; *Canell v. Bradshaw*, 840

20  F.Supp. 1382, 1393 (D. Or. 1993) (finding pain from a missing filling to be a serious dental

21  need).

22          Defendants K. Vandenberg, A. Rice, M. Paulus, Kerri Taft responded to Plaintiff's health

23  request forms or grievances during the relevant period and the complaint sufficiently alleges

these Defendants were aware Plaintiff had a dental problem and was experiencing severe pain. *See Jett v. Penner*, 439 F.3d 1091, 1097 (9th Cir. 2006) (denying summary judgment because a jury could find a doctor had knowledge of the prisoner's injury where the prisoner sent letters, grievances, and medical slips to the doctor).

With knowledge of Plaintiff's serious dental needs, Plaintiff sufficiently alleges that Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft acted in an intentional or reckless manner when they failed to immediately refer Plaintiff to a dentist for treatment. While there is some indication that Plaintiff was seen at sick call by medical and prescribed Tylenol and Ibuprofen at some point over the several-week period he was awaiting dental treatment, the complaint reflects he continued to experience and complain of ongoing significant pain despite these medications. There is also no indication whether any other examination was performed on Plaintiff or whether a stronger form of pain medication was considered. Furthermore, despite his complaints of significant pain and infection first noted in his medical chart on March 5, 2020, as well as his four medical requests and/or complaints filed between March 16, 2020 and March 21, 2020, alleging extreme pain, infection, difficulty eating, drinking and talking, Plaintiff was not examined by a dentist until March 28, 2020. Furthermore, after Plaintiff's tooth extraction was stopped due to an equipment malfunction mid-way through the procedure on March 28, 2020, despite Plaintiff's ongoing complaints of significant and even increased pain, numbness, and inability to eat or drink, he was not seen by a dentist again until April 16, 2020.

The complaint reflects that there was no dentist permanently assigned to the Jail and Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft were not medically trained to provide Plaintiff with the necessary treatment for his dental problems. The complaint alleges Plaintiff was not examined by a dentist until 23 days after Plaintiff's broken tooth and abscess

REPORT AND RECOMMENDATION - 11

were first noted in his medical chart and 12 days after his initial medical request was submitted complaining about his broken tooth and concerns about infection. The delay in Plaintiff being initially seen by a dentist resulted in Plaintiff suffering in pain for 23 days and the subsequent delay in completing his dental treatment resulted in Plaintiff suffering in even more pain for an additional 19 days until he was taken to an oral surgeon outside the Jail to complete the extraction of his tooth.

"Access to medical staff has no meaning if the medical staff is not competent to deal with the prisoners' problems." *Canell*, 840 F.Supp. at 1394 (*citing Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982)). Viewing the allegations in the light most favorable to the Plaintiff, the complaint shows Defendants failed to provide meaningful access to dental care as they were not dental professionals. Further, the complaint sufficiently alleges that Defendants did not refer Plaintiff to a dentist in a timely manner. *See Robertson v. Kitsap County*, 2015WL8488800 (W.D. Wash. Oct. 27, 2015)  (Denying motion to dismiss Eighth Amendment claim where complaint showed defendants failed to provide meaningful access to dental care as they were not dental professionals and failed to refer plaintiff to dentist in a timely manner). Rather, Plaintiff was initially scheduled for sick call and although he was at some point thereafter placed on the list to see the dentist he was told the dentist only came to the jail once per week, that patients were only seen in the order kites were submitted, and Plaintiff would just have to wait his turn. The complaint further reflects that, despite Plaintiff's complaints of severe pain, infection and difficulty eating and drinking, he was not even sent to the dentist on the first occasion the dentist was scheduled to come to the Jail. Furthermore, after the dentist's equipment failed in the middle of the first tooth extraction attempt, despite Plaintiff's repeated complaints of increased pain,

1   numbness, swelling and inadequacy of pain medication, he was not seen by the dentist again for

2   an additional 19 days.[3]

3       The Court cannot conclude, based on the allegations of the complaint, that this was

4   simply a case of negligence or a difference of medical opinion. The facts, viewed in the light

5   most favorable to the Plaintiff, sufficiently allege that Defendants K. Vandenberg, A. Rice, M.

6   Paulus, and Kerri Taft acted with deliberate indifference when they intentionally delayed in

7   providing Plaintiff with meaningful dental care. *See Hunt*, 865 F.2d at 200 (finding the plaintiff

8   sufficiently pled a claim of deliberate indifference when the plaintiff alleged prison officials

9   were aware of bleeding gums, breaking teeth and an inability to eat, yet failed to take action to

10  relieve pain until new dentures could be fitted); *Canell*, 840 F.Supp. at 1393 (denying summary

11  judgment where a nurse observed a large hole in the prisoner's tooth, tears in his eyes, and

12  swollen gums, yet refused to refer the prisoner to a qualified doctor or dentist and told the

13  prisoner he would be seen when he was transferred to a different facility); *Field v. Gander*, 734

14  F.2d 1313, 1315 (8th Cir. 1984) (finding deliberate indifference where a prisoner claimed a jailor

15  knew of the prisoner's pain from an infected tooth but refused to provide dental care for up to

16  three weeks).

17      Furthermore, the Court notes that it appears that Plaintiff was very likely a pretrial

18  detainee at the time of the events giving rise to his complaint. Defendants did not move to

19  dismiss under the Fourteenth Amendment standard applicable to pretrial detainees and, as noted

20  above, the standard for stating a constitutional claim of inadequate medical care under the

21  Fourteenth Amendment standard is less demanding than the Eighth Amendment standard

22

23

---

[3] The Court notes that Defendants motion to dismiss states that Plaintiff alleges he was seen on April 9, 2020, but the complaint clearly alleges Plaintiff was not seen until April 16, 2020. *See* Dkt. 17, at 3; Dkt. 4, at 13.

1    applicable to post-conviction prisoners. Thus, analyzing Plaintiff's claims under the less

2    demanding Fourteenth Amendment standard, Plaintiff has sufficiently stated a claim against

3    Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft. More specifically, he has

4    sufficiently alleged that these Defendants made an intentional decision with respect to the

5    conditions under which the Plaintiff was confined, that those conditions put the Plaintiff at

6    substantial risk of suffering serious harm, that they did not take reasonable available measures to

7    abate that risk, even though a reasonable official in the circumstances would have appreciated

8    the high degree of risk involved, and by not taking such measures, they caused the Plaintiff's

9    injuries.

10           However, the Court finds that Plaintiff fails to state a claim of constitutionally inadequate

11    medical care, whether analyzed under the Eighth or Fourteenth Amendment, with respect to

12    Defendants C. Hackney and John Ackerman. With respect to Defendant Hackney, Plaintiff

13    alleges only that she responded to his very first complaint regarding pain in his tooth and concern

14    about infection and request to be seen by medical by placing him on the sick call list. Beyond

15    placing him on the sick call list after his first request to be seen by medical, Plaintiff does not

16    allege Defendant Hackney was aware of his continued complaints of pain, infection, inability to

17    eat or drink, or was involved in his subsequent care in any other way. As such, Plaintiff fails to

18    allege sufficient facts to state a claim of deliberate indifference to a serious medical need on the

19    part of Defendant Hackney. Nor does Plaintiff allege sufficient facts to establish that Defendant

20    Hackney made an intentional decision with respect to the conditions under which the Plaintiff

21    was confined, that those conditions put the Plaintiff at substantial risk of suffering serious harm,

22    that she did not take reasonable available measures to abate that risk, even though a reasonable

23

1    official in the circumstances would have appreciated the high degree of risk involved, and by not

2    taking such measures, she caused the Plaintiff's injuries.

3        With respect to Defendant Ackerman, Plaintiff alleges only that he denied Plaintiff's

4    appeal of a medical grievance Plaintiff initially filed on May 15, 2020. Plaintiff fails to explain

5    the contents of the grievance or how the denial of the grievance violated his constitutional right

6    to medical care. Plaintiff also states in conclusory fashion that Defendant Hackney was entrusted

7    as a medical supervisor to ensure Plaintiff received proper medical and dental care and was

8    aware of Plaintiff's dental emergency but failed to take appropriate action. These generalized and

9    conclusory allegations are insufficient to state a claim of constitutionally inadequate medical care

10   under either the Eighth or Fourteenth Amendment standards.

11       In sum, Defendants' motion to dismiss should be denied with respect to Plaintiff's claims

12   of constitutionally inadequate medical care against Defendants K. Vandenberg, A. Rice, M.

13   Paulus, and Kerri Taft. Defendants' motion to dismiss should be granted with respect to the

14   claims of constitutionally inadequate medical care against Defendants Ackerman and Hackney

15   and those claims should be dismissed without prejudice.

16   **B.    Intentional Infliction of Emotional Distress**

17       Under Washington law, a claim of intentional infliction of emotional distress, also known

18   as outrage, must be based on behavior that is 'so outrageous in character, and so extreme in

19   degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and

20   utterly intolerable in a civilized community." *Strong v. Terrell*, 147 Wash. App. 376, 385, 195

21   P.3d 977 (2008) (quoting *Kloepfel v. Bokor*, 149 Wash.2d 192, 196, 66 P.3d 630 (2003)). The

22   level of outrageousness required is "extremely high." *Christian v. Tohmeh*, 191 Wash. App. 709,

23   736, 366 P.3d 16 (2015) (internal citation omitted). "In order to make a prima facie case of

REPORT AND RECOMMENDATION - 15

1    intentional infliction of emotional distress, a plaintiff seeking to survive summary judgment must

2    produce evidence showing three elements: (1) extreme and outrageous conduct, (2) intentional or

3    reckless infliction of emotional distress, and (3) actual result to the plaintiff of severe emotional

4    distress." *Christian*, 191 Wash. App. at 735; *Kloepfel*, 149 Wash.2d at 195; *Grimsby v. Samson,*

5    85 Wash.2d 52, 59, 530 P.2d 291 (1975). Generally, the elements of a claim for intentional

6    infliction of emotional distress are questions of fact. *Strong v. Terrell*, 147 Wn. App. 376, 385,

7    195 P.3d 977 (2008).

8      With respect to Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft,

9    construing the complaint in the light most favorable to the Plaintiff, accepting all of his

10   allegations as true, and drawing all reasonable inferences from the complaint in Plaintiff's favor,

11   Plaintiff has alleged sufficient facts with respect to the delay in providing Plaintiff adequate

12   dental treatment and the failure to adequately address Plaintiff's ongoing complaints of pain,

13   (described in more detail above), and his resulting "emotional anguish" (Dkt. 4, at 10) to state a

14   claim for intentional infliction of emotional distress. *See, e.g., Chambers-Castanes v. King*

15   *County*, 100 Wash.2d 275, 288-289 (1983) (reversing lower court dismissal of claim for

16   intentional infliction of emotional distress and finding plaintiff's allegations that police failed to

17   respond in a proper and timely manner despite repeated calls for assistance sufficient to state a

18   claim for intentional infliction of emotional distress); *Doe v. United States*, 419 F.3d 1058, 1062

19   (9th Cir. 2005) ("On a motion to dismiss for failure to state a claim, the court must construe the

20   complaint in the light most favorable to the plaintiff, taking all her allegations as true and

21   drawing all reasonable inferences from the complaint in her favor."). Accordingly, Defendants'

22   motion to dismiss should be denied with respect to Plaintiff's claims of intentional infliction of

23   emotional distress against Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft.

REPORT AND RECOMMENDATION - 16

As described above, with respect to Defendant Hackney, Plaintiff alleges only that she signed him up for sick call when he first requested to see medical because of his tooth pain. With respect to Defendant Ackerman, Plaintiff alleges only that he was involved in the denial of an appeal of some unspecified grievance. These allegations are insufficient to state a claim for intentional infliction of emotional distress. Defendants' motion to dismiss should be granted with respect to the claims of intentional infliction of emotional distress against Defendants Hackney and Ackerman and those claims should be dismissed without prejudice.

## C.   Medical Negligence

Defendants also move to dismiss Plaintiff's medical negligence claims based upon Plaintiff's failure to comply with RCW 7.70A.020. Dkt. 17.

RCW 7.70A.020(2) provides that "[a] party [in a medical malpractice action] that does not initially elect to submit a dispute to arbitration under this chapter must file a declaration with the court...." RCW 7.70A.020(2). "In the case of a claimant, the declaration must be filed at the time of commencing the action and must state that the attorney representing the claimant presented the claimant with a copy of the provisions of this chapter before commencing the action and the that the claimant elected not to submit the dispute to arbitration under this chapter." *Id.* Defendants argue that Plaintiff's failure to comply with RCW 7.70A.020 requires dismissal. However, by its terms, RCW 7.70A.020 specifically discusses this filing requirement, at least in part, in terms of the obligations of the claimant's *attorney*, not the claimant. Thus, by its terms, this provision does not appear to apply to pro se plaintiffs. Defendants cite no case law to indicate that this requirement does in fact apply to pro se plaintiffs or that dismissal of a pro se plaintiff's claim is required where such a declaration is not filed at the commencement of the

1    suit. Accordingly, the Court recommends Defendants' request for dismissal on this basis be

2    denied.

3              Alternatively, Defendants move to dismiss Plaintiff's medical negligence claims for

4    failure to state a claim. A claim of medical negligence under Washington law requires the

5    plaintiff to prove two elements: 1) defendant "failed to exercise that degree of care, skill, and

6    learning expected of a reasonably prudent health care provider" in defendant's position, and 2)

7    that failure proximately caused plaintiff's injury. RCW § 7.70.040; *Keck v. Collins*, 184 Wn.2d

8    358, 371, 357 P.3d 1080 (2015); *Watson v. Washington Dep't of Corr.*, No. C17-5968-BHS-TLF,

9    2018 WL 7150488, at *8 (W.D. Wash. Nov. 15, 2018), *report and recommendation adopted sub*

10   *nom. Watson v. Washington State Dep't of Corr.*, No. C17-5968 BHS, 2019 WL 399070 (W.D.

11   Wash. Jan. 31, 2019), *aff'd*, 812 F. App'x 695 (9th Cir. 2020).

12             With respect to Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft, Plaintiff

13   has alleged sufficient facts with respect to the delay in providing Plaintiff adequate dental

14   treatment and the failure to adequately address Plaintiff's ongoing complaints of pain, (described

15   in more detail above) to state a claim for medical negligence under the above standard.

16   Accordingly, Defendants' motion to dismiss should be denied with respect to Plaintiff's claims

17   of medical negligence against Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft.

18             With respect to Defendants Ackerman and Hackney, Plaintiff has failed to allege

19   sufficient facts to demonstrate that they failed to exercise that degree of care, skill, and learning

20   expected of a reasonably prudent health care provider in defendant's position, and that the failure

21   proximately caused plaintiff's injury. As described above, with respect to Defendant Hackney,

22   Plaintiff alleges only that she signed him up for sick call when he first requested to see medical

23   because of his tooth pain. With respect to Defendant Ackerman, Plaintiff alleges only that he was

1    involved in the denial of an appeal of some unspecified grievance. These allegations are

2    insufficient to state a claim for medical negligence. Defendants' motion to dismiss should be

3    granted with respect to the claims of medical negligence against Defendants Ackerman and

4    Hackney and those claims should be dismissed without prejudice.

5    **D.     Due Process – Grievance Process**

6          Plaintiff also alleges that Defendants violated his right to Due Process. Specifically,

7    Plaintiff alleges on March 21, 2020, he submitted his first grievance which was denied by K.

8    Vandenberg stating that staff were limiting non-emergent appointments due to the COVID-19

9    epidemic. Plaintiff states he filed a medical grievance on May 15, 2020, which was denied

10   initially and denied again on appeal by medical administrator John Ackerman, medical

11   commander K. Beltran, and jail administrator Ric Bishop. Plaintiff states that per the Clark

12   County Medical Inmate Grievance Form, inmates are supposed to receive an answer to their

13   grievance within 10 business days from each administrative level. However, Plaintiff indicates

14   his medical grievance had gotten lost which delayed a response from the jail administrator Ric

15   Bishop for 3 months. Plaintiff alleges generally his due process rights were violated when his

16   grievances and requests for relief were denied.

17         "The Due Process Clause protects plaintiff against the deprivation of liberty without the

18   procedural protections to which he is entitled under the law." *Bledsoe v. Martinez*, 2020 WL

19   4671616, at *2 (E.D. Cal., Aug. 12, 2020) (*citing Wilkinson v. Austin*, 545 U.S. 209, 221 (2005)).

20   But plaintiff has no stand-alone due process right related to the administrative grievance process.

21   *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003); *Mann v. Adams*, 855 F.2d 639, 640 (9th

22   Cir. 1988). The denial, rejection, cancellation, delay in processing, or ignoring of a grievance

23   does not, in itself, constitute a due process violation. *See, e.g., Evans v. Skolnik*, 637 Fed. Appx.

1    285, 288 (9th Cir. 2015), *cert. dism'd*, 136 S. Ct. 2390 (2016) ("An allegation that a prison

2    official inappropriately denied or failed to adequately respond to a grievance, without more, does

3    not state a claim under § 1983."); *Wright v. Shannon*, 2010 WL 445203, at *5 (E.D. Cal. Feb. 2,

4    2010) (plaintiff's allegations that prison officials denied or ignored his inmate appeals failed to

5    state a cognizable claim under the First Amendment); *Towner v. Knowles*, 2009 WL 4281999 at

6    *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegations that prison officials screened out his inmate

7    appeals without any basis failed to indicate a deprivation of federal rights); *Williams v. Cate*,

8    2009 WL 3789597, at *6 (E.D. Cal. Nov. 10, 2009) ("Plaintiff has no protected liberty interest in

9    the vindication of his administrative claims."); *Daniels v. Aguillera*, 2018 WL 1763311 (E.D.

10   Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is

11   impossible for due process to have been violated by ignoring or failing to properly process prison

12   grievances.").

13        Thus, Plaintiff's allegations related to the delay in processing or denial of his grievances

14   fail to state a cognizable due process claim and, due to the nature of these claims, the Court

15   cannot conceive of any additional facts that could be alleged to state a viable due process claim

16   based on the grievance process. Accordingly, Defendants' motion to dismiss Plaintiff's due

17   process claim related to the grievance process should be GRANTED and Plaintiff's claims

18   dismissed with prejudice.

19   **E.    Amendment**

20        Because Plaintiff did not file a response to the motion to dismiss or allege any additional

21   facts to indicate that any of his deficient claims could be cured by amendment, it appears to the

22   Court that Plaintiff is not capable of amending his deficient claims. Therefore, the deficient

23   claims, discussed above, should be dismissed without leave to amend. *See, Hartmann v. CDCR*,

707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile."). If Plaintiff believes he can state additional facts to cure his deficient claims through amendment, he should indicate this and present these facts in his objections to the Report and Recommendation.

**CONCLUSION**

Based on the foregoing, the Court recommends Defendants' motion to dismiss be granted-in-part and denied-in-part. The Court finds that Plaintiff has failed to state a claim upon which relief may be granted with respect to his Due Process claims related to the grievance process and recommends that those claims be dismissed with prejudice against all Defendants. The Court finds that Plaintiff has failed to state a claim upon which relief may be granted with respect to his constitutional claims of inadequate medical care, and his state law claims of intentional infliction of emotional distress and medical negligence, alleged against Defendants John Ackerman and C. Hackney, and those claim should be dismissed without prejudice. The dismissed claims should be dismissed without leave to amend. The Court finds that Plaintiff has stated a claim with respect to his constitutional claims of inadequate medical care and his state law claims of intentional infliction of emotional distress and negligence, alleged against Defendants K. Vandenberg, A. Rice, M. Paulus, and Kerri Taft, and those claims should proceed. The Court further recommends that, if the Report and Recommendation is adopted, that the action be referred back to the undersigned for further proceedings on the remaining claims.

**OBJECTIONS AND APPEAL**

This Report and Recommendation is not an appealable order. Therefore a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge enters a judgment in the case.

REPORT AND RECOMMENDATION - 21

1    Objections, however, may be filed and served upon all parties no later than **September**

2 **16, 2021.** The Clerk should note the matter for **September 17, 2021**, as ready for the District

3 Judge's consideration if no objection is filed. If objections are filed, any response is due within

4 14 days after being served with the objections. A party filing an objection must note the matter

5 for the Court's consideration 14 days from the date the objection is filed and served. The matter

6 will then be ready for the Court's consideration on the date the response is due. Objections and

7 responses shall not exceed **8 pages**. The failure to timely object may affect the right to appeal.

8    DATED this 26th day of August, 2021.

9

10    _____
         BRIAN A. TSUCHIDA
11        United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

REPORT AND RECOMMENDATION - 22